UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 07-20215-CIV-ALTONAGA

**ORLANDO HOLIDAYS, INC.** and
**SOUTH BEACH RESORTS, LLC**,

    Appellants,
vs.

**740 OCEAN DRIVE CORP.**,

    Appellee.
_____/

## ORDER ON BANKRUPTCY APPEAL

**THIS CAUSE** came before the Court upon Appellants, Orlando Holidays, Inc. and South Beach Resorts, LLC's ("Appellants[']") appeal from the bankruptcy court's October 12, 2006 Order on South Beach Resorts, LLC's Motion for Determination Finding South Beach Resorts, LLC and Orlando Holidays, Inc. Obligated to Pay Debtor "Additional Purchase Price" of $1,000,000, in the case styled *In re 740 Ocean Drive Corp.*, Case No. 03-42999-BKC-AJC. In their appeal, Appellants challenge the bankruptcy court's interpretation of a series of agreements between the parties to this appeal. The Court has carefully considered the briefs submitted by the parties, the arguments of counsel at the May 29, 2007 hearing, the pertinent portions of the record, and applicable law.

### I. BACKGROUND

On December 10, 2003, Appellee, 740 Ocean Drive Corp. ("Appellee") filed a voluntary petition as debtor under Chapter 11 of the United States Bankruptcy Code. (Bankr. D.E. 1). During the course of Appellee's bankruptcy proceedings, Appellant, Orlando Holidays, Inc., entered into an agreement to purchase Appellee's primary asset, real property located at 740 Ocean Drive, Miami

Beach, Florida, known as the Boulevard Hotel (the "Property").[1] In documenting their agreement for the sale and purchase of the Property, the parties first entered into a Contract for Sale and Purchase (the "Purchase Agreement") on March 1, 2005. (Bankr. D.E. 279). The Purchase Agreement provided that Appellants would purchase the Property for a total purchase price of $9 million, $8 million of which was to be paid at or before closing, and further provided that:

> The parties agree that the Additional Purchase Price shall be payable by [Appellants] to [Appellee] on or before nine months after Closing Date, in the amount of $1,000,000.00, which payment shall be the obligation of [Appellants] . . . and as further additional purchase price ("Further Additional Purchase Price"), [Appellants] and [Appellee] shall share equally 50% each of the Net Savings . . . in debt satisfaction of [Appellee] obligations [sic] achieved, which Net Savings will thereby be equal to the net actual savings realized in the total Purchase Price in comparison to the stated $8,000,000.00 Purchase Price amount.

(*Id.* at Addendum ¶ 13).

The Purchase Agreement also provided Appellants with the opportunity to participate in an adversary proceeding brought by Appellee against mortgagees with which Appellee had outstanding loans. (*Id.*). In that proceeding, Appellee alleged, among other things, that the mortgagees had charged usurious interest rates. The adversary proceeding was ultimately settled, with Appellee agreeing to pay to the mortgagees $4.1 million (the "Mortgage Settlement Amount") in full satisfaction of the mortgagees' claims. The parties agree that this $4.1 million was less than the total value of the mortgagees' claims prior to settlement. They also agree, however, that Appellee did not receive any "affirmative recovery" in the adversary proceeding.

On April 19, 2005, the bankruptcy court approved the sale of the Property to Appellants in an Order (the "Sale Order") that provided, in relevant part:

---

[1] Orlando Holidays, Inc. subsequently assigned its rights to Appellant, South Beach Resorts, LLC. Throughout this Order, Orlando Holidays, Inc. and South Beach Resorts, LLC are referred to collectively as "Appellants."

> [Appellants'] representative[, Frederick Pauzar,] testified that the full purchase price of $9 million was to be paid to the [Appellee]. . . . [Appellants were] prepared to fund the litigation the [Appellee] had initiated against The Mortgagees. To the extent the litigation produced a recovery, [Appellants] would share in the recovery with the [Appellee's] equity holders . . . .

(Bankr. D.E. 215 at p. 6).

On June 30, 2005, prior to closing on the Property, the parties entered into a separate agreement, the Post Closing Agreement. The Post Closing Agreement provided that:

> Pursuant to paragraph 13 of the Addendum to the Purchase Agreement and the Court Order both of which are incorporated herein by this reference and made a part hereof, the [Appellants] are obligated to pay [Appellee] the sum of ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS ("Additional Purchase Price") on or before March 30, 2006, which amount is subject to offset as more specifically set forth therein.

(Bankr. D.E. 241 at p. 1, ¶ D). The Post Closing Agreement did not address the terms "Further Additional Purchase Price" or "Net Savings," nor did it define the term "offset." The Post Closing Agreement provided for judicial resolution of any dispute between the parties regarding the "offset" agreed upon by the parties. The transaction subsequently closed, but the parties apparently never resolved their dispute regarding what, if any, "offset" Appellants were entitled to.

Thereafter, on February 27, 2006, Appellants filed a motion entitled, "Motion for Determination of Amount of Saving Split Due Purchaser Pursuant to the Court's April 19, 2005 Amended Final Order Pursuant to 11 U.S.C. §§ 105, 363, 365, and 1146(C) and Fed. R. Bankr. P. 6004, Authorizing and Approving the Sale of the Real and Personal Property of the Debtor to Orlando Holidays, Inc., Free and Clear of All Liens, Claims and Encumbrances, With Such Interest to Attach to the Proceeds of Sale." (Bankr. D.E. 273). In their Motion, Appellants sought a determination of whether they were entitled, under their contracts with Appellee, to a reduction of the Additional Purchase Price in the amount of 50% of the difference between the Mortgage

Settlement Amount and the total amount of the mortgagees' claims, a reduction Appellants claimed was provided for in paragraph 13 of the Addendum to the Purchase Agreement.  (*See id.* at pp. 3-4).

In an Order signed on October 12, 2006 (the order that is the subject of this appeal), the bankruptcy court held that Appellants were not entitled to any reduction in the Additional Purchase Price, finding, in relevant part, that:

(1)     The Purchase Agreement unambiguously provided for the purchase of the Property for $9 million, with $8 million due upon closing and $1 million due on or before nine months after closing.  (Bankr. D.E. 298 at ¶ 21).

(2)     The "Further Additional Purchase Price" clause of the Purchase Agreement was patently ambiguous because it

> is insensible and obscure; indeed, it lacks any meaning at all.  A phrase in a contract is "ambiguous" only when it may be understood in more ways than one. . . .  The Court, reading the language of the "Further Additional Purchase Price" clause is unable to discern even a single meaningful interpretation and, notably, neither party has offered one.

(*Id.* at ¶ 25).  Accordingly, relying upon precedents from Florida state cases, the court declined to allow the admission of parol evidence to explain what the parties intended to accomplish with the "Further Additional Purchase Price" clause.  (*Id.*).

(3)     The Post Closing Agreement did not use the terms "Further Additional Purchase Price" or "Net Savings," instead referring to the Additional Purchase Price, which was subject to an "offset."  (*Id.* at ¶ 27).

(4)     "Offset" was defined in the Purchase Agreement, which the parties explicitly incorporated into the Post Closing Agreement, as follows:

> Any expenses or liabilities incurred by the [Appellants] as a result of any provision hereof being materially untrue, inaccurate or incorrect shall entitle the [Appellants]

4

to offset such amount related thereto against the Further Additional Purchase Price otherwise payable hereunder.

(*Id.*).

(5)   Appellants had not claimed that any provision of the Purchase Agreement was untrue, inaccurate, or incorrect, so the "offset" provision in the Post Closing Agreement did not apply to the parties' transaction. (*Id.* at ¶ 28).

(6)   Therefore, there was no basis to apply any offset to the $1 million Additional Purchase Price. (*Id.* at ¶ 30). The bankruptcy court also held that Appellants were not entitled to a reduction in the Additional Purchase Price because there was no affirmative recovery in the adversary proceeding. (*Id.* at ¶ 22). Under the plain terms of the contract documents, the bankruptcy court held, Appellee was entitled to the entire $1 million Additional Purchase Price.

Appellants challenge the bankruptcy court's findings on a number of bases, arguing, *inter alia*, that (1) the Further Additional Purchase Price clause of the Purchase Agreement unambiguously entitled the parties to share in any reduction in amounts owed that the Appellee received as a result of the Mortgagee Settlement; (2) the Further Additional Purchase Price clause was latently ambiguous such that parol evidence should have been admitted to discern the intent of the parties in drafting the clause; (3) the bankruptcy court erred as a matter of law in refusing to ascribe any meaning to the Further Additional Purchase Price clause; (4) the bankruptcy court erred in relying upon the "offset" provision in the Purchase Agreement to discern the meaning of the "offset" provision in the Post Closing Agreement. Appellee maintains that the bankruptcy court acted properly in finding the Further Additional Purchase Price clause meaningless and in refusing to admit parol evidence to construe the clause. Appellee also maintains that the bankruptcy court's interpretation of the "offset" provision in the Post Closing Agreement was correct.

5

Case No. 07-20215-CIV-ALTONAGA

## II.  ANALYSIS

### A.  Standard of Review

District courts exercise appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. *See* 28 U.S.C. § 158(a). On appeal, a district court reviews a bankruptcy court's conclusions of law, including its interpretation of contract provisions, *de novo*. *See Daewoo Motor Amer., Inc. v. Gen. Motors Co.*, 459 F.3d 1249, 1256 (11th Cir. 2006).

### B.  The Parties' Agreements

After reviewing the parties' agreements *de novo*, the undersigned finds that the "Additional Purchase Price" clause in the Post Closing Agreement did not unambiguously provide for the payment of an Additional Purchase Price of $1,000,000.00. Instead, the clause provided for an Additional Purchase Price of "($1,000,000.00) DOLLARS ("Additional Purchase Price") on or before March 30, 2006, **which amount is subject to offset as more specifically set forth therein**." (Bankr. D.E. 241 at p. 1, ¶ D) (emphasis added).

Where a contract provision is unambiguous, courts must interpret it as written. Where the provision is ambiguous, meaning subject to more than one possible interpretation, however, courts may admit parol evidence in order to discern the intent of the parties in drafting the provision. *See Bucacci v. Boutin*, 933 So.2d 580, 583 (Fla. 3d DCA 2006) ("[P]arol evidence is admissible to assist a court in contract interpretation when the language of a contract is not clear, plain, certain, undisputed, unambiguous, or is subject to conflicting inferences . . . ."). Appellants correctly point out in their reply brief that in order to be unambiguous, a contract provision must only be subject to one interpretation and that, should this Court find that the provision at issue is subject to more than one interpretation, it must reverse the bankruptcy court's order and remand for the admission of parol

evidence regarding the parties' intentions in drafting the provision.

Here, the "Additional Purchase Price" clause is subject to more than one interpretation. One interpretation is that reached by the bankruptcy court: that the "therein" in the phrase "is subject to offset as more specifically set forth therein" meant within the parties' other agreements, the Purchase Agreement and the Sale Order, which the parties explicitly incorporated into their Post Closing Agreement.[2]

The undersigned finds, however, that at least one alternative interpretation exists. The "therein" referenced above could have been taken to mean "in paragraph 13 of the Addendum to the Purchase Agreement." The clause of the Post Closing Agreement, in its entirety, reads:

> Pursuant to paragraph 13 of the Addendum to the Purchase Agreement and the Court Order both of which are incorporated herein by this reference and made a part hereof, the [Appellants] are obligated to pay [Appellee] the sum of ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS ("Additional Purchase Price") on or before March 30, 2006, which amount is subject to offset as more specifically set forth therein.

---

[2] After so interpreting the term "therein," the bankruptcy court looked to the Purchase Agreement for a definition of the term "offset." What it located there, however, cannot fairly be said to be a "definition." The bankruptcy court relied upon the following passage contained in the Purchase Agreement:

> Any expenses or liabilities incurred by the [Appellants] as a result of any provision hereof being materially untrue, inaccurate or incorrect shall entitle the [Appellants] to offset such amount related thereto against the Further Additional Purchase Price otherwise payable hereunder.

(Bankr. D.E. 279 at Addendum ¶ 13).

This is not a definition, but simply a statement of another situation in which Appellants would be entitled to an "offset." Indeed, the Purchase Agreement's "offset" provision is not contained in a "definitions" section of the contract at all. Moreover, the Purchase Agreement's "offset" provision refers to an offset against the Further Additional Purchase Price, which the bankruptcy court held did not exist because it found that particular clause meaningless. Therefore, the bankruptcy court's finding that the use of the term "offset" was unambiguous simply by reference to the parties' agreements was incorrect as a matter of law.

In addition, principles of contract interpretation require that, unless there is some indication that the parties to a contract intended a particular word to have a special meaning, the word shall be afforded its plain meaning. *See Delissio v. Delissio*, 821 So.2d 350, 353 (Fla. 1st DCA 2002). Here, the term "offset" was not defined by the parties, but it was interpreted in a manner not consistent with its plain meaning.

(Bankr. D.E. 241 at p. 1, ¶ D).  It is a reasonable interpretation of the Post Closing Agreement to hold that by "therein," the parties meant in the part of paragraph 13 of the Addendum that discusses the parties sharing 50% in the "Net Savings" achieved in the adversary proceeding against Appellee's mortgagees.  In other words, the "offset" the parties reference in the Post Closing Agreement may have been intended to mean the same thing as the "Further Additional Purchase Price" provision in the Purchase Agreement.  Appellants have advanced this interpretation in their briefs, and the undersigned finds such an interpretation reasonable.

The Court's finding that two alternative interpretations of the Post Closing Agreement exist is sufficient to warrant reversal of the bankruptcy court's Order and a remand for the admission of relevant parol evidence regarding the parties' intentions in drafting the "offset" provision of the Post Closing Agreement.[3]

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the bankruptcy court's October 12, 2006 Order on South Beach Resorts, LLC's Motion for Determination Finding South Beach Resorts, LLC and Orlando Holidays, Inc. Obligated to Pay Debtor "Additional Purchase Price" of $1,000,000.00 (Bankr. D.E. 298) is **REVERSED**.  The matter is **REMANDED** to the bankruptcy court for the purpose of reconsidering its findings regarding the following:

---

[3] The undersigned also notes that in its Order, the bankruptcy court, in addition to finding that Appellants were not entitled to any "offset" because the "offset" clause of the Purchase Agreement was not implicated, also found that "there was no offset to which Appellants were entitled because there was no affirmative recovery in the adversary proceeding." (Bankr. D.E. 298 at ¶ 22).  It is unclear how the bankruptcy court reached this conclusion in the absence of parol evidence, and the conclusion appears to have been premised upon the testimony of a single witness, Frederick Pauzar, in a hearing not related to the interpretation of the provisions at issue here.

Case No. 07-20215-CIV-ALTONAGA

(1) What the parties intended to convey in the clause of the Post Closing Agreement providing for the payment of an Additional Purchase Price of "($1,000,000.00) DOLLARS ("Additional Purchase Price") on or before March 30, 2006, which amount is subject to offset as more specifically set forth therein." (Bankr. D.E. 241 at p. 1, ¶ D).

(2) Whether the parties intended such "offset" to encompass only the sharing of any affirmative recovery against Appellee's mortgagees, or whether they intended the "offset" to include the sharing of any savings that the Appellee enjoyed as a result of settling its claims with the mortgagees for less than the total amount of its outstanding loans with the mortgagees; and, if the parties did intend for Appellants to receive a reduction in the $1 million Additional Purchase Price, how that reduction should be calculated.

Given the ambiguities in the contractual language detailed above, consideration of these issues should take into account appropriate parol evidence relevant to the parties' intentions in drafting their agreements.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of May, 2007.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

Copies provided to:

All counsel of record